Mr. Justice Merrick
delivered the opinion of the court.
This was an action instituted by the voluntary assignee of a debtor, for the benefit of creditors, against the marshal who had taken possession of the goods under certain writs of execution. The defendant, the marshal, rested his defence upon the ground that the assignment was a fraudulent one, and the question tried before the court and jury was as to the fraudulent nature of that deed.
The exceptions in this case are multitudirous, and it is quite impossible for the court to travel over them in detail, numbering as they do, twenty-two in all, chiefly directed to points of evidence and not involving any general questions of law in themselves. Therefore, independent of other considerations, it will he useless to enter into minute criticism upon the rulings of the court upon these various points of evidence, with the exception oí a single one, where the plaintiff took exception to the offer in evidence of the writ of fi. fa. under which the marshal justified the taking of the goods, and set up title upon the ground that it had not been ^returned prior to the return day.
It is a general principle of law familiar to the practice of this District and to the practice of England through an unbroken succession of decisions, that a writ of execution— final process as distinguishable from mesne process — does not require a return to give it vitality. It may be relied upon as an element of evidence at any time in title to land or title to personal property, independent of the fact of its having been returned prior to the return day. Indeed it is a looseness of practice not to be commended, but still it is a practice justified, that a writ of that sort does not lose any of its efficacy by not having been returned. So far do the *160 courts go with, reference to the process of final execution, that even after the return day has passed, and long after the particular sheriff has gone out of his office, still, having life while in office, it is his duty, and the right of nohody else, to perfect that execution which he has levied; and if the succeeding sheriff undertakes, under a writ of venditioni exponas or otherwise, to execute that incomplete process, it is null and void, because the former sheriff is the only man who can execute the process.
That being so, the fact remains that the return may be made at any time, and when made it is of equal effect and of equal verity as if it had been made prior to the return day. The object of having a return day is that the sheriff in default may be held responsible to the parties if he is guilty of aiiy laches; and that they may have a day in court to vindicate themselves with respect to any rights they may have respecting the process of execution.
That disposes of the question chiefly relied upon as to the title of the defendant — that the process was not returned by the return day, and, therefore, could not have been returned properly.
There were various exceptions taken to points of evidence. It may be remarked that in cases whore fraud is the foundation of the action, there is a larger latitude, of necessity, given to questions of evidence only, than in any other class of cases, and that it is oftentimes impossible a priori (ab ante, as some lawyers more properly say), to determine whether a particular state of facts is or is not in the given issue of fraud. Fraud being so variant, and the act itself being equivocal, may or may not become evidence of fraud according as the future developments of the case may reflect upon it. The human motive which is at the bottom of this is so peculiar that a man may do one act from one motive and a different man do the same or some similar act from a totally different motive; and the slightest circumstances have such a kaleidoscopic action upon a set of facts, that it is impossible until they are all developed to determine what shall or shall not be the particular influence of a particular *161 incident upon the whole array of facts brought in view. Hence it is expedient, and oftentimes necessary, that evidence, not apparently admissible, shall be allowed to be given to the jury, subject to the control of the court, in afterwards rejecting or modifying it, with proper instruction, with reference to that particular state of circumstances.
It was that character of procedure which was resorted to, most appropriately, by the court below in the trial of this case. And in reviewing the action of the court we do not find, although the counsel were very astute in this number of exceptions to which we have alluded, that there was any error in the ruling upon the evidence at all.
The counsel relied very strongly upon the point that the allowance at the trial of evidence of acts by the assignor subsequent to the deed of assignment was erroneous. It is true that acts of the assignor subsequent to the assignment were admitted in evidence. An independent act or an independent declaration of an assignor after the assignment, can be of no value, of course, to prejudice an unquestionably good assignment, and per se is no evidence against it. But when those acts or declarations are shown to be made in connection with any privity of the assignee, and coupled with a certain scheme of procedure for the purpose of carrying it out, the court, by appropriate instructions guiding the mind of the jury in the application of these subsequent and extraneous acts, may properly submit them to the jury to reflect upon the antecedent intent.
That is what the court below did in this case, and it very properly, therefore, rejected one of the prayers of the plaintiff — the eighth prayer — which he presented, which was too general upon that subject, and granted his twelfth prayer which covered the entire law of that matter. The eighth prayer as rejected is in these words:
“ The jury are instructed that they are not at liberty to consider evidence of matters subsequent to the execution of the assignment as against that instrument, unless they find in such evidence by the facts proven, that the assignor and plaintiff combined or colluded for the purpose of hin *162 dering and delaying the creditors of Strasburger, and that the assignment was made in pursuance of such scheme.”
That prayer was rejected because the language, of it was too vague. But the same proposition which was probably meant to be embodied in that, was granted in the twelfth instruction, in these words:
“ The evidence of the act subsequent to the execution of the assignment relied on by the defendant as evidence of fraud in the sale of goods, can only be considered by the jury as reflecting back upon the interest of the assignor when he made the assignment. The mere fact that the assignor sold the goods recklessly or below their face value would only be proof of the assignee’s conduct and in itself would not tend to invalidate the deed of assignment.”
That prayer was granted, and in connection with it the charge to the jury that they could only take into consideration those external and subsequent acts where they were shown from the other evidence to have been made and enacted in complicity with the assignee, and as part of the obvious scheme and combination between the two to perpetrate a fraud upon the creditors.
It is unnecessary to prolong this opinion any longer, except -to say that we find, in all the exceptions that were taken, no error on the part of the judge, either in his ruling on the evidence or in the instruction and charge which he gave to the jury. Whatever might at all have some suspicion of inadmissibility was so qualified by the charge itself as to take away any possible danger of the jury being misled by what was submitted to their consideration.
The judgment of the court below is therefore affirmed.